UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OTIS R. NICHOLSON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | 10 C 629 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Otis R. Nicholson, Jr., is no stranger to employment discrimination litigation. Over the past eight years, Nicholson has filed three lawsuits against three former employers, one Equal Employment Opportunity Commission ("EEOC") charge against another former employer, and six lawsuits against supervisors or co-workers. Doc. 69 at ¶¶ 74-80. In this lawsuit against what appears to be his most recent former employer, Allstate Insurance Company, Nicholson asserts an broad array of claims, alleging discrimination, retaliation, and harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.; 42 U.S.C. § 1981; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.; and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Allstate has moved for summary judgment on all of Nicholson's claims. Because Nicholson has not adduced evidence sufficient to survive summary judgment, the motion is granted.

**Background**

The facts are set forth as favorably to Nicholson as the record and Local Rule 56.1 allow. Nicholson is a fifty-two years old African-American male who suffers from diabetes and sleep

apnea. Allstate hired Nicholson in December 2007 as a project manager consultant in its Information Technology ("IT") department. Project manager consultants have both a direct supervisor, known as a project management partner, and an assignment-specific supervisor, known as a delivery manager. In January 2009, Nicholson's co-worker Debra "Dee" Payne, an African-American female, was promoted and became his project management partner. Having been told about problems with Nicholson's performance, Payne took actions that Nicholson described as "exerting herself," such as pulling him into meetings, standing behind him with her arms folded while he was working, and speaking with IT Systems Director John Krinitsky about him. Doc. 69 at ¶ 31; Doc. 69-3 at 96-97. Payne coached Nicholson throughout 2009 to address, among other things, his failure to handle issues appropriately, his lack of understanding of project management processes and procedures, and his failure to thoroughly and accurately document on Allstate's database the status of his projects. Doc. 69 at ¶¶ 32-33; Doc. 69-6 at ¶¶ 5-6. Payne became "violent" and "verbally abusive" towards Nicholson during one coaching session, physically threatening him by jumping up with a pen in her hand and angrily shouting. Doc. 68 at 4.

From late 2008 through early 2009, Kelly Coomer was one of Nicholson's delivery managers. In April 2009, Coomer e-mailed Nicholson about the way he handled a problem with her project, specifically referencing his failure to bring the problem to her attention. The e-mail opened by saying, "What the heck is going on." Doc. 77-1 at 15. In a May 2009 e-mail to Payne, Coomer expressed concern about Nicholson's performance, stating that he "just doesn't get it." Doc. 74 at 26. Coomer also spoke to Krinitsky about her concerns. Nicholson found Coomer's actions to be "demeaning and disrespectful." Doc. 69-3 at 77.

Allstate employees receive two performance reviews per year. During mid-year reviews, employees discuss their performance with their project management partner and may receive a performance review rating. At year-end reviews, employees must receive a performance review rating. From best to worst, the available ratings are: exceptional, outstanding, successful, fair, and unacceptable. In 2008, Nicholson received a "fair" rating at his mid-year review and a "successful" rating at his year-end review. Doc. 69 at ¶¶ 39-40. In June 2009, Nicholson received a "fair" rating at his mid-year review, which Payne conducted. *Id*. at ¶¶ 41-42.

During Nicholson's tenure at Allstate, IT department policy allowed employees to work from home one day per week if they maintained a performance rating of "successful" or higher. After receiving a "fair" rating at his 2009 mid-year review, Nicholson sought permission to continue working from home as an accommodation for his disabilities. Doc. 69 at ¶ 47; Doc. 69-3 at 100. Nicholson explained that the accommodation, by eliminating his commute, would help him on the days he had sleep problems caused by his sleep apnea. Allstate repeatedly asked Nicholson for medical documentation to support the proposition that he had to work from home for medical reasons. Doc. 69 at ¶ 48; Doc. 69-3 at 101-04; Doc. 69-4 at ¶ 10. Nicholson gave Allstate four different documents addressing his medical conditions, but none stated that those conditions required that he be allowed to work from home. Doc. 69 at ¶¶ 48-49; Doc. 69-3 at 110. Because Nicholson did not provide the medical documentation Allstate requested, his request to work from home was denied. Doc. 69 at ¶ 50; Doc. 69-4 at ¶ 11.

On July 13, 2009, Nicholson contacted Allstate's conflict resolution call center, complaining that Payne had subjected him to race- and sex-based discrimination and harassment since January 2009. Allstate human resources employee Juan Cortez investigated the complaint. Nicholson later reported to Cortez that by September 2009, "some of the issues had been

addressed and that things were appearing to change for the better." Doc. 69 at ¶ 46; Doc. 69-3 at 120.

On September 14, 2009, Nicholson filed an EEOC charge alleging that Allstate discriminated against him based on his race, sex, age, and disabilities. The charge claimed that Allstate "subjected [Nicholson] to different terms and conditions of employment, including, but not limited to, not being allowed to work from home and having [his] work scrutinized[,] … a poor performance evaluation[,] … [and s]imilarly situated younger, non-Black, female, non-disabled employees [being] treated more favorably." Doc. 69-2 at 19. Nicholson's charge also claimed that Allstate retaliated against him for lodging his internal complaint about discrimination and harassment. *Ibid*. On October 21, 2009, the EEOC reached a no-cause finding and issued a right-to-sue notice to Nicholson. Doc. 69 at ¶ 63; Doc. 69-15 at 4.

On October 22, 2009, Nicholson received a letter from Allstate informing him that he would be effective December 31, 2009, due to a department-wide reduction-in-force ("RIF"). Doc. 69 at ¶ 61; Doc. 69-4 at ¶ 13. Allstate implemented the RIF to reduce operating expenses in response to fiscal pressures and a decline in work for project managers. Doc. 69 at ¶¶ 52-53; Doc. 69-4 at ¶ 12. Allstate used several criteria to determine who would be terminated. Doc. 69 at ¶ 54; Doc. 69-4 at ¶ 13. Employees with the skills needed for current and upcoming work demands were retained. Doc. 69 at ¶ 54; Doc. 69-4 at ¶ 13. Within the IT department, project manager consultants who had the skills necessary for integration and vendor engagement projects were retained. Doc. 69 at ¶ 55; Doc. 69-4 at ¶ 14. Project manager consultants who did not have that skill set were retained or terminated based on their most recent annual performance review rating, and then based on their years of service to Allstate. Doc. 69 at ¶ 54; Doc. 69-4 at ¶ 13.

Allstate terminated fifty-four employees as part of the RIF, including Nicholson and four other project manager consultants. Doc. 69 at ¶ 58; Doc. 69-4 at ¶ 16. Nicholson was selected for termination because he did not possess the skill set necessary for integration and vendor engagement work, and because he had the fewest years of service (1.78 years) of the remaining project manager consultants rated "successful" in their most recent annual review. Doc. 69 at ¶ 56; Doc. 69-4 at ¶ 15. Of the four other terminated project manager consultants, one was a white non-disabled female and three were white non-disabled males. Doc. 69 at ¶ 58; Doc. 69-4 at ¶ 16. Thirty project manager consultants were retained, of whom twenty-six were over forty years old, ten were men, and four were African-American. Doc. 69 at ¶ 59; Doc. 69-4 at ¶ 17.

Nicholson filed this lawsuit on January 29, 2010. On October 25, 2010, Nicholson filed a second EEOC charge, which largely duplicates the first EEOC charge but adds a claim based on his termination. Doc. 69 at ¶ 65; Doc. 69-17 at 2. To date, the EEOC has not concluded its proceedings on the second charge, and no right-to-sue notice has been issued. For purposes of summary judgment, however, Allstate expressly waived any exhaustion issues arising from Nicholson's failure to receive a right-to-sue notice for the only EEOC charge alleging a wrongful termination. Doc. 68 at 6 n.11; *see Volovsek v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 344 F.3d 680, 687 (7th Cir. 2003) (holding that the employment discrimination defendant "waived" any argument that the plaintiff failed "to exhaust her administrative remedies"); *Gibson v. West*, 201 F.3d 990, 993 (7th Cir. 2000) (the requirement that an employment discrimination plaintiff exhaust administrative remedies before the EEOC is subject to "the doctrines of waiver, estoppel, and equitable tolling") (internal quotation marks omitted). Accordingly, Nicholson's wrongful termination claims will be considered on the merits.

**Discussion**

Nicholson alleges that Allstate: (1) discriminated against him because of his race, sex, and age; (2) retaliated against him for complaining about discrimination; (3) subjected him to a hostile work environment; and (4) failed to provide reasonable accommodations for his disabilities. Before addressing these claims, the court notes that Allstate, in moving for summary judgment, provided Nicholson with the notice to pro se litigants required by Local Rule 56.2. Doc. 70. Despite receiving that notice, Nicholson failed to comply with the Local Rules in numerous respects. His Local Rule 56.1(b)(3) violations are addressed in detail below. His summary judgment brief (Doc. 74 at 1-14) cites directly to raw record materials, not to the Local Rule 56.1 statements. *See Jorden v. United States*, 2011 WL 4808165, at *1 (N.D. Ill. Oct. 11, 2011) (citing cases); *Byrd-Tolson v. Supervalu, Inc.*, 500 F. Supp. 2d 962, 966 (N.D. Ill. 2007) ("facts are properly presented through the framework of the Rule 56.1 statements, and not through citation in the briefs to raw record material"). And his brief is extremely disorganized and difficult to follow. All that said, the court has endeavored to view Nicholson's substantive arguments in the best possible light, although Nicholson's failures to adduce pertinent evidence under Local Rule 56.1 will not be excused. *See Cichon v. Exelon Generating Co.*, 401 F.3d 803, 809-10 (7th Cir. 2005) ("Specifically as to Local Rule 56.1, [w]e have … repeatedly held that a district court is entitled to expect strict compliance with [Local] Rule 56.1.") (alterations in original) (internal quotation marks omitted).

**I.      Race, Sex, and Age Discrimination Claims**

Nicholson alleges that Allstate discriminated against him based on his race in violation of Title VII and § 1981, based on his sex in violation of Title VII, and based on his age in violation of the ADEA. To survive summary judgment on the Title VII and § 1981 claims, Nicholson

must adduce evidence that would allow a reasonable jury to find that Allstate's decision to subject Nicholson to an adverse employment action was motivated by his race or (for the Title VII claim only) by his sex. *See Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.3d 853, 860 (7th Cir. 2007) ("An unlawful employment practice is established when a plaintiff demonstrates that a protected characteristic, such as sex, was a motivating factor for an employment decision."); *Friedel v. City of Madison*, 832 F.2d 965, 966 n.1 (7th Cir. 1987) ("while section 1983 and Title VII reach both sex and race discrimination, claims of sex discrimination are not cognizable under section 1981"). "Discrimination claims under both Title VII and § 1981 are analyzed in the same manner." *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 338 (7th Cir. 2002). For his ADEA claim, Nicholson must adduce evidence that would allow a reasonable jury to find that but for his age, Allstate would not have subjected him to an adverse employment action. *See Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009); *Barton v. Zimmer, Inc.*, 662 F.3d 448, 455 n.3 (7th Cir. 2011).

The only adverse employment action at issue here is Nicholson's termination. Allstate's Local Rule 56.1(a)(3) statement asserts that the following fact is undisputed: "Except for his termination, Plaintiff does not claim that he suffered any 'tangible job consequence' as a result of the conduct attributed to Allstate managers and coworkers of which he complains." Doc. 69 at ¶ 67. Nicholson denies this asserted fact. Doc. 77 at ¶ 67. Local Rule 56.1(b)(3)(B) requires Nicholson to support that denial with evidence. *See Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 689 (7th Cir. 2000) ("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission.") (internal quotation marks omitted). Nicholson's pro se status does not excuse him from complying with that rule. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("we

-7-

have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules."); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("strictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a pro se litigant") (citations omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("even *pro se* litigants must follow rules of civil procedure").

In denying Allstate's assertion that termination was the only "tangible job consequence" he suffered, Nicholson cites evidence for the proposition that he was "placed into probationary status." Doc. 77 at ¶ 67. The evidence cited, however, does not support that proposition. The evidence consists of a performance feedback form indicating that Payne was planning to request permission "to place Otis Nicholson on UPN," Doc. 77 at 22, with "UPN" being an acronym for "Unacceptable Performance Notification." Doc. 77-1 at 2. The evidence does not indicate, however, that Nicholson actually was placed on UPN. Consequently, the court deems admitted Allstate's assertion that termination was the only adverse employment action suffered by Nicholson.

With respect to the grounds for Nicholson's termination, Allstate's Rule 56.1(a) statement asserts:

> 54.   [For purposes of the RIF], it was determined that employees who had skills needed for existing work or work scheduled for delivery in 2010 would be retained, and after that employees would be evaluated based on their most recent annual performance rating followed by years of service.

> 55. As far as the first criteria relating to skills, within the group of project manager consultants, it was determined that those with the skill set required for integration and vendor engagement work on certain projects would be retained because it would be needed for the department's portfolio of work with an outside vendor in 2010.
>
> 56. Plaintiff was selected for the RIF because: (1) he did not possess the above-referenced skill set, and (2) of all project manager consultants who had an annual performance rating of Successful (and for that matter even among those rated higher than Successful), Plaintiff had the lowest seniority at 1.78 years of service.

Doc. 69 at ¶¶ 54-56. Although Nicholson's Rule 56.1(b)(3)(B) response denies ¶ 56, it cites no evidence to support the denial. Doc. 77 at ¶ 56. (Nicholson's denials of ¶¶ 54-55 cite some evidence, *id*. at ¶¶ 54-55, but none that contradict Allstate's factual assertions and, as noted below, none that provide any evidence of pretext.) "[A] mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). The court therefore deems admitted Allstate's assertion that Nicholson was terminated as part of the RIF due to his skill set, performance rating, and seniority—all completely nondiscriminatory reasons.

Nicholson's admission dooms his claim that he was terminated due to his race, sex, or age. This is so regardless of whether Nicholson is seeking to forestall summary judgment under the direct method of proof, the indirect burden-shifting method of proof, or both. Under the direct method, Nicholson must show that Allstate's decision to terminate him "was motivated by an impermissible purpose." *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 548 (7th Cir. 2011). Nicholson cannot make that showing because, on this record, he was included in the RIF for completely nondiscriminatory reasons. Under the indirect method, assuming without deciding that Nicholson can establish a prima facie case, Nicholson must show that Allstate's proffered nondiscriminatory reason for terminating him was pretextual. *See Patterson v. Ind.*

*Newspapers, Inc.*, 589 F.3d 357, 364-65 (7th Cir. 2009). Again, having admitted that Allstate terminated him for completely nondiscriminatory reasons, Nicholson cannot show that Allstate's stated reasons were a pretext to cover up some invidious motivation. Accordingly, Allstate is entitled to summary judgment on Nicholson's discrimination claims. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005) (by failing to challenge key statements in the defendant's Local Rule 56.1(a)(3) statement, the plaintiff "conced[ed] that this essential element of her case could not be proven, … [and] left the court with no option but to grant the defendants' summary judgment motion").

Allstate would be entitled to summary judgment on those claims even if Nicholson did not admit Allstate's assertion in ¶ 56 that he was terminated for plainly nondiscriminatory reasons. Nicholson's Local Rule 56.1(b)(3)(B) response elsewhere cites evidence purportedly showing that Allstate's explanation for Nicholson's termination was pretextual. Doc. 77 at ¶¶ 54-55. That evidence does not undermine Allstate's submission that Nicholson was terminated as part of the RIF because he did not possess the requisite skill set and because he had the lowest seniority of all project manager consultants given an annual performance rating of Successful. Doc. 69 at ¶ 56. For example, Nicholson cites to Payne's handwritten notes about his performance and her communications with Cortez, in which Payne contemplates issuing Nicholson a UPN. Doc. 77-1 at 2. Nicholson asserts that this evidence indicates that Allstate planned to terminate him and simply used the RIF as a convenient vehicle. This characterization of the evidence is untenable. Although Payne's communications consider the possibility of giving Nicholson a UPN, they provide no reasonable basis to infer that Allstate's decision to include Nicholson in the RIF was motivated by discriminatory animus. The other evidence Nicholson cites—his certificate of membership in the Project Management Institute, Doc. 76-1

at 21, and e-mail correspondence, from before he was hired, with Allstate's Assistant Vice President of Product Technology, Doc. 77-1 at 35—also do nothing to contradict Allstate's stated reason for terminating him.

In sum, given the facts of record, a reasonable jury could not conclude that Nicholson's race and sex motivated Allstate's decision to terminate him, or that his age was the but-for cause of his termination.

## II. Retaliation Claim

Nicholson claims that Allstate retaliated against him for complaining about discrimination to Allstate's human resources department and for filing an EEOC charge. Title VII forbids an employer from discriminating against an employee who "opposed any practice" prohibited by Title VII or who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). "The antiretaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms … by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)). The retaliation provisions of the ADA and ADEA are materially identical to the Title VII provision, and § 1981 also encompasses retaliation claims. *See* 42 U.S.C. § 12203(a) (ADA); 29 U.S.C. § 623(d) (ADEA); *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008) ("42 U.S.C. § 1981 encompasses claims of retaliation").

As noted above, the only alleged retaliatory action at issue here is Nicholson's termination. As with his discrimination claims, Nicholson's retaliation claims are doomed by his admission that Allstate terminated him as part of the RIF because "he did not possess the ... skill

set [necessary for upcoming projects], and ... of all the project manager consultants who had an annual performance rating of Successful (and for that matter even among those rated higher than Successful), Plaintiff had the lowest seniority at 1.78 years of service," Doc. 69 at ¶ 56—reasons that are completely non-invidious. Under the direct method of forestalling summary judgment on a retaliation claim, Nicholson must establish that "there was a causal connection" between his "protected conduct" (complaining about discrimination internally and to the EEOC) and his termination. *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 673 (7th Cir. 2011). Nicholson's admission precludes that showing. *See Egan v. Freedom Bank*, 659 F.3d 639, 642 (7th Cir. 2011) (a retaliation defendant is entitled to summary judgment if it "presents unrebutted evidence that it would have taken the adverse employment action against the plaintiff anyway, in which event the defendant's retaliatory motive, even if unchallenged, was not a but-for cause of the plaintiff's harm") (internal quotation marks omitted). Under the indirect method, and assuming a prima facie case is shown, Nicholson must show that Allstate's "proffered reason" for terminating him was pretextual. *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 602 (7th Cir. 2011). Again, that showing is precluded by Nicholson's admission that he was terminated for non-invidious reasons.

Allstate would be entitled to summary judgment on Nicholson's retaliation claims even putting aside his admission. To establish causation under the direct method of proof, Nicholson may use direct or circumstantial evidence. *See Leitgen*, 630 F.3d at 673. Direct evidence "entail[s] something akin to an admission by the employer ('I'm firing you because you had the nerve to accuse me of sex discrimination!')." *Coleman v. Donahoe*, __ F.3d __, 2012 WL 32062, at *18 (7th Cir. Jan. 6, 2012) (some internal quotation marks omitted); *see also Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009). Direct evidence is "rare," *Nagle*,

a554 F.3d at 1114, and Nicholson presents none here.  Causation also may be established "by presenting a 'convincing mosaic' of circumstantial evidence that would permit the same inference [of retaliation] without the employer's admission."  *Coleman*, 2012 WL 32062, at *18 (some internal quotation marks omitted).  Circumstantial evidence may consist of (1) "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn," (2) "evidence showing that the employer systematically treated other, similarly situated … employees better," or (3) "evidence that … the employer's justification [for the adverse action was] pretextual."  *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011) (internal quotation marks omitted); *see also Coleman*, 2012 WL 32062, at *19.

      Nicholson's circumstantial evidence falls far short of the mark.  He focuses principally on timing—the fact that his notice of termination followed his EEOC charge by just over one month and his internal complaint by three months.  Doc. 74 at 2-3, 9.  In egregious cases, suspicious timing alone might create a triable issue on causation.  *See Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011) ("Occasionally, … an adverse action comes so close on the heels of a protected act that an inference of causation is sensible."); *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 793 (7th Cir. 2007).  But it rarely does.  *See Coleman*, 2012 WL 32062, at *19 ("We have often invoked the general rule that temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter.") (internal quotation marks omitted); *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 905 (7th Cir. 2005) ("suspicious timing alone rarely is sufficient to create a triable issue"); *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 981 (7th Cir. 2004) ("'mere

temporal proximity' is not enough to establish a genuine issue of material fact"). Under ordinary circumstances, "[c]lose temporal proximity provides evidence of causation and may permit a plaintiff to survive summary judgment *provided that* there is other evidence that supports the inference of a causal link." *Scaife v. Cook Cnty.*, 446 F.3d 735, 742 (7th Cir. 2006) (emphasis added) (internal quotation marks omitted).

This is not the rare case where temporal proximity alone creates a triable issue on causation. As just noted, Nicholson received notice of his termination just over one month after filing his EEOC charge and three months after lodging his internal complaint. Given the large number of Allstate employees included in the RIF and the evidence that Nicholson's skill set, performance rating, and lack of seniority led to his inclusion in the RIF, "any inference of a causal link between [Nicholson's internal complaint and EEOC charge and his] subsequent ... termination would be based on speculation or conjecture, and such inferences are beyond the scope of [the court's] obligation to the nonmovant." *Argyropolous v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (quoting *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008)) (internal quotation marks omitted). On this record, no reasonable jury could find that Nicholson would not have been terminated but for his complaints about discrimination.

Nicholson would fare no better under the indirect method of proof, which requires that a plaintiff "first establish a prima facie case of retaliation." *Basith v. Cook Cnty.*, 241 F.3d 919, 932 (7th Cir. 2001). To establish a prima facie case, Nicholson must "demonstrate that he (1) engaged in protected activity; (2) was performing his job satisfactorily; and (3) was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity did not suffer." *Dickerson*, 657 F.3d at 601-02. Nicholson's prima facie case founders on the third element, as he has not identified any similarly situated Allstate

employee—in terms of skill set, performance rating, and seniority—who did not engage in statutorily protected activities yet who survived the RIF. Accordingly, even putting aside the admission discussed above, Nicholson could not forestall summary judgment on his retaliation claims under the indirect method.

## III. Hostile Work Environment Claim

Nicholson claims that the harassment he suffered based on his race and sex created a hostile work environment in violation of Title VII and § 1981. To survive summary judgment on this claim, Nicholson must provide "sufficient evidence to create a material issue of fact as to four elements: (1) the work environment must have been both subjectively and objectively offensive; (2) his race [or sex] must have been the cause of the harassment; (3) the conduct must have been severe or pervasive; and (4) there must [be] … a basis for employer liability." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 390 (7th Cir. 2010); *see also Ellis v. CCA of Tenn., LLC*, 650 F.3d 640, 647 (7th Cir. 2011) (applying the same analysis to Title VII hostile work environment claim as to § 1981 hostile work environment claim); *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009). With respect to the first and third elements, "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *see also Ellis*, 650 F.3d at 647. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citation omitted).

Nicholson's brief argues that the following twelve incidents, involving several of his co-workers, created a hostile work environment:

- a. Elizabeth Lofter's throwing project documentation and work on desk and floor

- b. Filing Police Report against Dee Payne for intimidation and threats

- c. John Krinitsky threaten Plaintiff by saying he was going to "kick him in his ass"

- d. Phyllis Graham telling Plaintiff to sit his "Black ass down!"

- e. Dee Payne taking Plaintiff's coat off a hanger and throwing Plaintiff's coat across his desk

- f. Kelly Coomer telling Director that she wanted Plaintiff taken off CoHo initiatives

- g. Dee Payne standing behind Plaintiff with her arms crossed when Plaintiff was holding a teleconference call

- h. Frank Czarnik yelling insults aloud repeatedly that Plaintiff wore Zubaz pants

- i. Russ Khandross complaining behind Plaintiff's back stating that Plaintiff doesn't take advice

- j. Kim Schultz tampering with Plaintiff's work by changing meeting calendar

- k. Belle Ege, I'm your manager now! You don't understand our Process and Procedures, I'm having Katie Selkowe provide you support

- l. Katie Selkow, You do know why I'm working with you? I don't take any shit!

Doc. 74 at 11. Items b-f, i, k, and l are either not referenced in Nicholson's Local Rule 56.1(b) statement or, if referenced, are not supported by evidence; for these reasons, those alleged instances of harassment will not be considered. The remaining allegations (a, g, h, j), even

assuming their truth, "were isolated incidents that were neither sufficiently severe or pervasive to rise to the level of actionable harassing conduct." *Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 732 (7th Cir. 2009); *see also Scruggs*, 587 F.3d at 840-41 ("Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment."). On this record, no reasonable jury could find for Nicholson on his hostile work environment claim.

## IV.    ADA Failure to Accommodate Claim

Nicholson's final claim is that Allstate's denial of his request to work from home violated the ADA because working from home was a reasonable accommodation for his sleep apnea. The ADA prohibits an employer from discriminating against an individual by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). To survive summary judgment, Nicholson must adduce evidence that would allow a reasonable jury to find that: "(1) []he is a qualified individual with a disability; (2) [Allstate] was aware of h[is] disability; and (3) [Allstate] failed to reasonably accommodate the disability. In conjunction with this third element, the ADA requires that employer and employee engage in an interactive process to determine a reasonable accommodation." *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008) (quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005)) (internal quotation marks and citations omitted).

Allstate focuses on the third element, arguing that Nicholson was responsible for the breakdown in the interactive process. Although "there is no hard and fast rule for assigning responsibility when a breakdown in the interactive process occurs[,] … when the parties are missing information … that can only be provided by one of the parties, … the party withholding

the information may be found to have obstructed the process." *Jackson v. City of Chi.*, 414 F.3d 806, 813 (7th Cir. 2005) (some alterations in the original) (citation omitted) (quoting *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135-36 (7th Cir. 1996)) (internal quotation marks omitted).

The record indisputably shows that Nicholson obstructed the interactive process. Allstate's Local Rule 56.1(a)(3) statement asserts, in relevant part:

> 48. In response [to Nicholson's request that his work-from-home option be reinstated], Allstate requested on several occasions during 2009 that Plaintiff supply medical information supporting the need for his request to work from home. Plaintiff replied with either outdated or irrelevant information:
>
> * * *
>
> 49. None of the documents stated that any medical professional examined him and determined he needed to work from home for medical reasons[;] nor do the documents reference whatsoever anything about working from home.

Doc. 69 at ¶¶ 48-49. Nicholson does not controvert the statement in ¶ 48 that Allstate requested medical information supporting his request to work from home, and he does not cite any evidence in his partial denial of ¶ 49, Doc. 77 at ¶¶ 48-49, thus conceding that he provided no documentation in which a medical professional stated that Nicholson had to work from home for medical reasons. *See Smith*, 321 F.3d at 683; *Michas*, 209 F.3d at 689. Because Nicholson did not engage in the interactive process, he cannot establish the third element of his ADA claim and thus cannot survive summary judgment on that claim. *See Jackson*, 414 at 814 (affirming "the district court's determination that [the plaintiff] was responsible for the breakdown in the interactive process and … the court's subsequent conclusion that [the plaintiff] could not claim that the [defendant] failed to accommodate her").

**Conclusion**

For the foregoing reasons, Allstate's summary judgment motion is granted in its entirety. Judgment is entered in favor of Allstate and against Nicholson.

January 23, 2012  _____
United States District Judge